AUGUST SEASTREAM, CHARLES C. ALEXANDER et al.,

*v.*

THE NEW JERSEY EXHIBITION COMPANY.

[Decided July 22d, 1904. Filed December 23d, 1904.]

1. The proofs, on application for preliminary injunction against Sunday ball games as a nuisance, *held* to show facts as to disturbance from noises authorizing the relief.

2. Owners of land adjoining an enclosed ground, to which admission is charged to see ball games, are not estopped to seek injunction against Sunday ball games thereon as a nuisance because for several years before the enclosure persons taking possession of the grounds without let or hindrance played Sunday ball games in the presence of all choosing to look, and the same class of noises had been made, without attempt at relief against the same by such onlookers and persons alighting at the same place from electric cars and going for amusement to the river and the woods in the vicinity.

3. Any misjoinder in a suit for injunction against Sunday ball games as a nuisance because of some of the complaints alleging injury from the noises on the ball grounds and others from the noise of those in the street, may not be urged against a preliminary injunction, as this may be remedied later by requiring an election and striking from the record the names of complainants not affected by the kind of injury on which it is elected to rely.

On bill to restrain a nuisance.

On motion for preliminary injunction. Heard on bill and affidavits on the part of the complainants, and also on the part of the defendant.

*Mr. William H. Speer* and *Mr. Elmer W. Demarest,* for the complainants.

*Mr. Robert S. Hudspeth, Mr. James P. Northrop* and *Mr. Peter Bentley,* for the defendant.

PITNEY, V. C.

The object of the bill is to restrain the playing of baseball games on Sunday on a plot of ground called the "Eastern League Park," situate in the westerly part of the city of Bayonne, in the county of Hudson. This park comprises the greater portion of three blocks situate between the Hudson Boulevard, on the west, and Avenue B, on the east, and West Forty-sixth street, on the south, and West Forty-ninth street, on the north. Forty-seventh and Forty-eighth streets, as laid out on paper, traverse the park, but are not open on the ground. The park is about four hundred feet wide and five hundred feet long, and is enclosed with a board fence about fourteen feet high. Avenue C is about seven hundred feet east of Avenue B, and the more densely built part of the city lies to the east of it.

The complainants, of which, as the bill now stands, there are some twenty, own or occupy lands in the vicinity.

Persons visiting this park reach it by a trolley line which connects the Pennsylvania ferry, in Jersey City, with the extreme south end of Bergen Point, on the banks of the Kill von Kull, and which is laid through Avenue C. Those persons alight from and board the cars in Avenue C, at the corners of Forty-ninth, Forty-eighth and Forty-seventh streets.

The complaint of the complainants is twofold:

*First.* That the advertisement of the baseball games brings large numbers of persons, running into the thousands, on such occasions into the locality by the trolley conveyances; that they alight in such congested numbers in Avenue C that the sidewalks and streets do not accommodate them, and that they do not hesitate to encroach upon the private grounds and trample the lawns of the residents of that neighborhood; that they make a great deal of noise and clatter and use vulgar and obscene language, not only in alighting from the trolley cars and going to the park, but also in returning therefrom and scrambling for seats for the return to the cities, and indulge generally in rough and boisterous and disorderly conduct.

*Second.* That while viewing the ball games they become hilarious and excited, and shout and applaud in such a manner

and to such a degree as to disturb the neighbors for a considerable distance therefrom.

It is not alleged or shown by the affidavits that each of the complainants suffer from each of the two classes of annoyances, and hence it was urged at the argument that there had been a misjoinder. I shall refer to that later.

As originally presented the bill was filed by August Seastream, who, with his family, occupied a house immediately adjoining the park on the northeast, and who, it is alleged, suffers from the noise of the spectators of the game, and by Charles C. Alexander, who lives on the corner of Avenue C and Forty-seventh street, over seven hundred feet away from the park, but immediately adjoining that part of the trolley line where the visitors to the park alight from and board the cars. He represents the persons annoyed by the first class of injury.

The bill, however, in addition to naming the two persons just mentioned as complainants, declared that it was filed "on behalf of themselves and numerous other residents of said city, among whom are those whose affidavits are annexed to this bill of complaint."

Several affidavits were so annexed, and on the presentation of this bill, on May 7th, 1904, an order to show cause, with *interim* restraint, was advised by me, returnable May 16th, with leave to complainants to procure and serve further affidavits.

Further affidavits were made and served on both sides in great numbers and volume.

On the return day, May 16th, the hearing was adjourned by consent until May 23d. On that day, after the hearing was reached and proceeded with, and additional affidavits had been read on the part of the complainants, counsel for defendant, being called upon to proceed on its part, arose and said that it was admitted by them that complainants' affidavits made out a *prima facie* case under the doctrine of *Gilbough* v. *West Side Amusement Co., 64 N. J. Eq.* (*19 Dick.*) *27*, and *Cronin* v. *Bloemecke, 58 N. J. Eq.* (*13 Dick.*) *313*, but that they had, not only a complete answer on the merits, but also a written request, directed to the solicitors of complainants and signed

by Messrs. Seastream and Alexander, requesting them to discontinue the suit.

As the signatures to this paper were not verified by affidavits, I stated that I could act upon it only after notice to complainants; that its present effect rested entirely with the solicitors of complainants. They declined to act upon it, and immediately moved for, and, by consent, obtained, an order amending the bill by adding numerous other complainants by name. (The action of Mr. Alexander in signing the request to discontinue was afterwards explained by an affidavit made by him and filed by his counsel, and his desire was there expressed that the suit be continued.)

The defendant then commenced the reading of its affidavits, which were continued on that day and May 26th. Among these affidavits was one of the complainant Seastream, contradicting all to which he had testified in his former affidavit annexed to the bill, which affidavit was, later on, met by counter affidavits on the part of the complainants.

I then, on my own motion, took measures, which were heartily acquiesced in by counsel on both sides, to investigate the circumstances under which Seastream made the two conflicting affidavits.

That investigation is still pending, but the complainants' counsel has not stricken his name from the list of complainants.

I shall, however, disregard his affidavit in considering questions of fact.

I think both classes of injury sufficiently established by the affidavits.

The proof tends to show that some five or six of the complainants, who reside in the neighborhood of the park, have been disturbed by the noise of the shouts and applause from the grounds on the two Sundays when ball games had been played, to wit, on April 24th and May 1st, and several others of the complainants have suffered from the noise and unruly conduct of the great crowds alighting from and boarding the trolley cars in front of their residences and going to and from the park and the trolley.

The affidavits on the part of the defendant show that great pains were taken to prevent the spectators from making any noise while on the grounds.  They seem to have been aware and to have borne in mind that many of the persons who usually attend Sunday baseball games are very likely, if not almost certain, to indulge in noisy demonstration during the progress of the game, and thereby create a nuisance to the dwellers in the vicinity.

To ameliorate, if not entirely to prevent this result, they caused cards to be printed, as follows:

### "THE MANAGEMENT

Respectfully requests every one present to refrain from SHOUTING AND APPLAUSE and to maintain a gentlemanly demeanor at all times, especially WHILE APPROACHING AND LEAVING the grounds."

These cards were handed to every person who entered the park, and in addition personal requests were made and repeated to the spectators to refrain from noise.  While the defendant's affidavits tend to show that there was certainly much less noise than, as a matter of common knowledge, usually results from such exhibitions, they do not satisfy me that the affiants, who testify to being disturbed by such noises, are untruthful.

Besides, there is proof on the part of the complainants of much noise on the street in going to and from the park, and, in one instance, of extremely obscene language used by a man where it could be heard by females.

There are also among the affidavits of the defendant statements that on the two Sundays in question the spectators were unusually quiet and orderly in their use of the streets.

But this I found on pretty close examination was in many cases a mere favorable comparison with the character of the crowds, admittedly boisterous and unruly, which had infested the neighborhood on previous occasions, of which I shall speak later.

On the other hand, the affiants, on the part of the complainants, characterize the generality of the people attending the ball games as rough and boisterous and as rendering it extremely

disagreeable, if not unsafe, for women and children to meet them on the street.

With regard to the law covering the case, so far as noise is concerned, I do not care to add anything to or to repeat what I said in *Gilbough* v. *West Side Amusement Co., supra.* With regard to the cumbering by the crowds of the sidewalks, that aspect was dealt with by Vice-Chancellor Emery in *Cronin* v. *Bloemecke, 58 N. J. Eq. (13 Dick.) 313* (at *p. 314*), where he says:

"The third nuisance complained of is the collection of large numbers of idle and disorderly persons in the neighborhood of the grounds and of complainant's house while the games are in progress, which crowds, by their noise, vile language and behavior disturb the peace and quiet of the neighborhood and subject complainant and other residents to insults and abuse if they venture from their homes."

In dealing with it on *p. 318,* he says:

"The other objection which is urged specially against any injunction, based on the collection of disorderly persons outside of defendant's grounds, is that the nuisance is a public nuisance only and cannot be reached by injunction at the suit of complainant. But the right to relief in behalf of one who suffers private injury or annoyance from that which is a public nuisance is well settled. The only question is as to the character of the relief or remedy, and the right to relief by injunction against the special nuisance to one's dwelling-house by reason of crowds of disorderly persons upon the highways, drawn there by entertainments given by a third person upon his own lands for pecuniary profit, is based upon fundamental principles which have been recognized and enforced wherever they have been called in question. In *Rex* v. *Moore, 3 Barn. & A. 184* (which was an indictment), Lord Tenterden says: 'If a person collects together a crowd to the annoyance of his neighbors, that is a nuisance for which he is answerable.' In *Walker* v. *Brewster, L. R. 5 Eq. Cas. 25* (where an injunction was granted), it was held that a case of nuisance was established by the collection of a crowd on the highways in the neighborhood of grounds upon which enter-

tainments, with music and fireworks, were given continuously for profit. In *Bellamy* v. *Wells, 39 W. R. 158,* cited in *Barber* v. *Penley, 2 Ch. 457, 458 (1893)*, an injunction was granted against holding boxing or prize fight entertainments, which had the effect of collecting large and noisy crowds in the streets outside of the premises."

I need hardly say that I concur in this.

The affidavits on both sides dealt with the question of values of real estate; those on the part of the complainants asserting that the result of the permanent establishment of Sunday playing of baseball games would be to depreciate the value of the real estate in that neighborhood; and those on the part of the defendant asserting precisely the contrary.

In answer to the latter it was shown by counter affidavits that many of defendant's affiants were keepers of houses of entertainment in the neighborhood, and others were directly or indirectly interested in the success of the defendant's enterprise.

The well-known Hudson Boulevard, as already stated, bounds the ball park on the west, and, as I understand the evidence, though the whole region is laid out in streets, none have been opened or worked between the Hudson Boulevard and Newark bay and not all immediately to the east of the Boulevard have been opened or worked, and most of the improvements to the east and between that and Avenue B have been of cheap and moderate character, but it clearly appears that all the improvements that have been made are of a residential character.

I am, therefore, inclined to think that the result of the establishment of the Sunday baseball games will, in the long run, be detrimental to the value of real estate in the neighborhood.

The defendant raises another point by his affidavits which I feel constrained to mention, which is, that this immediate neighborhood has for a long time been subjected to the nuisance of baseball games on Sunday played on the very ground now occupied by the defendant corporation, and that such use of the ground has been acquiesced in by the dwellers in the neighborhood, and that only a slight distance to the west is Newark bay, which for many years has attracted great crowds of people on

Sundays.   That these people are attracted to its shores for amusements on Sundays, consisting of boating, crabbing, fishing and general picnicking in the woods, which are found between the ball park and the river, and that, quite independent of the baseball playing, a large crowd of persons has habitually, on Sundays, resorted to the neighborhood by means of the trolley, alighting at the very same part of the avenue and creating precisely the same nuisance as has been complained of in passing from the trolley cars to the base ball park and the woods and the shores of the bay.

The affidavits on the part of the defendant tend strongly to support this view.   It appears that the grounds, which for the first time, in April last, were fenced and occupied by the defendant, had previously laid open in common, and had for several years been used on Saturdays and Sundays by baseball players who came there on those days and took possession of them without the let or hindrance of the owners, and played their games in the presence of all who chose to look on, and that the non-paying onlookers formed a most undesirable, boisterous and noisy crowd, and were undoubtedly a nuisance to the neighborhood; also, that great crowds visited the woods lying between the ball grounds and the bay and its shores, attracted by the boating, crabbing, fishing and ability to divert themselves in the shaded commons and to refresh themselves in the numerous houses of entertainment which they found in those parts.

The reading of the affidavits on this subject fully accounts for the fact that the value of real estate between Avenue B and Newark bay is much depressed and lots difficult of sale, and that the thriving, populous city of Bayonne has practically stopped in its growth at Avenue B.

But does that state of affairs estop these complainants from asserting their rights as against this defendant?

In considering this question, it must be observed that the case shows that there were no particular persons or corporation who could be held responsible for or proceeded against for those annoying practices.   In fact, it clearly appeared by the proofs

in this case that prompt application was made to the municipal authorities by the complainants herein, as soon as they learned of the intention of the defendant to enclose the park in question and establish baseball playing on Sundays, to prevent the same, and that their appeals were in vain.

The only place in which the complainants could obtain any efficient relief was in this court. But in order to obtain relief in this court, there must be some person against whom to proceed. No responsibility, cognizable in this court, attached to the owners of the vacant lots, who simply permitted any parties who chose to come along and play baseball there, without any pecuniary profit to anybody except the common carriers who transported them.

So with the numerous persons who let out boats on Newark bay and kept houses of entertainment there; they could not be proceeded against by injunction. Hence, the complainants were practically without remedy.

But, even if there had been an available remedy, I by no means admit that it would have affected the equitable standing of the complainants herein. The state of affairs, however, was entirely changed when the defendant, a corporation, obtained exclusive possession and fenced in the old ball ground, erected accommodations in the way of seats and a grand stand, and fitted it up and made it attractive to that part of the public which enjoys such sports, and invited baseball clubs to come there on Sundays to play matches, and placed around this ball ground a high fence to exclude spectators, except such as should pay an admission fee for the benefit of the defendant.

That action afforded an opportunity for the complainants to assert their rights in this court, and I am of the opinion that they are entitled to relief by way of *interim* restraint upon the case as made.

There only remains to consider the question of misjoinder.

This question has been considered in many cases in this state. The last one, so far as I am at present advised, is *Rowbotham* v. *Jones,* decided by Chancellor McGill, and reported in *47 N. J. Eq. (2 Dick.) 337,* and affirmed, on his opinion, *48 N. J Eq. (3 Dick.) 311.*

The hardships attending the old rule were ameliorated by the rule adopted by Chancellor Zabriskie, May 8th, 1869 (No. 132 of the present series).

Chancellor McGill, in *47 N. J. Eq. (2 Dick.) 339,* states the rule thus: "It may be said that it is the established rule in this state that several owners of distinct tenements may join in a suit to restrain a nuisance or other grievance which is common to all of them, affecting each in a similar way, but may not so join when the object of the suit is to restrain that which does a distinct and special injury to each of their properties."

Applying that rule here, it is probable—I do not say certain—that this court would feel obliged, when properly moved thereto, to hold that the injury arising from noises by spectators of the games while in the ball park, and that arising from the crowds of semi-disorderly persons alighting from and mounting the trolley cars, and going to and from the ball park, will be so dissimilar as not to be capable of being enforced in the same suit by several persons joining therein who are not suffering, or liable to suffer, from each of those injuries. Be that as it may, I think it has no effect upon the present question. No demurrer has been filed. The defendant has not been embarrassed in presenting its defence to the present application.

The two different styles, so to speak, of injury, as shown by the affidavits, run into each other and interlace. They are both the result of the defendant's action, and the only effect, that I can at present see, will be, at some stage of the proceeding, to compel the complainants to elect on which kind of injury they will rely, and for the court to strike from the record the names of all complainants not affected by that kind of injury.

At present, I do not see how the right of those complainants who are injured by noise emanating from the baseball park to *interim* restraint can be affected by the circumstance that other complainants are affected by the misbehavior of persons on the street, outside of the baseball park, and *vice versa.*

I will advise an order restraining the playing of baseball on Sundays pending the suit.