## Minnig's Appeal.

1. A preliminary injunction is never awarded except in a clear case of right and where no doubt exists as to the claim of the plaintiff to the remedy he invokes, and where therefore the proof of the right is so equally balanced as to leave it in doubt, the injunction should be refused until the rights of the parties are ascertained.

2. A court of equity may interfere in a case of trespass to prevent irreparable mischief and multiplicity of suits, but if the trespass be fugitive and temporary, and adequate compensation can be had in an action at law there is no ground to justify its interposition, and no decree should be made to be followed by injunction unless irreparable injury be clearly established.

October 6th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Court of Common Pleas of *Erie county :* Of October and November Term 1875, No. 164. In Equity.

This appeal was from a decree granting a special injunction to restrain Jacob Minnig from tearing down a fence between the lot of himself and wife, and that of the complainant, E. E. Stuerznickel.

The bill, which was filed September 10th 1874, sets forth that complainant owns a lot on Ninth street in the city of Erie; that upon the east side of this lot there is a fence which for twenty-five years has been the undisputed boundary line of complainant's lot; that Jacob Minnig owns the lot adjoining, and disputes this boundary line, and has repeatedly declared that he will tear down the fence; has given complainant notice that he would tear down and remove it within three days, and threatened complainant in an angry manner; that complainant is afraid he will carry his threats into execution; that the fence is valuable and necessary, and if torn down will do complainant irreparable damage, and he therefore prays for a special injunction, and upon final hearing a perpetual injunction to restrain defendant.

A special injunction issued, and on the 14th of September 1874, defendant filed an answer which claims that the fence is the boundary line, and avers that it is two feet upon the land of himself and wife; admits that he notified complainant to remove the fence from the land of defendant and wife, and that defendant would erect a more comely fence on the true boundary line; denies that the

complainant has the exclusive property in the fence; that defendant ever intended to threaten to occupy the land of complainant, and denies also the right of complainant to occupy defendant's property.

On the 21st of September the preliminary injunction was continued until further order.

When the cause was at issue a master was appointed to take testimony and report, from whose report it appeared, that the title to a certain in-lot, No. 698, was in 1847 vested in Mrs. Mary De Witt; that the western half of this in-lot she sold in 1847, its boundaries being described by certain courses and distances, but by no monuments or marks on the ground; that this western half of said in-lot by various mesne conveyances, in which were preserved the same description, finally vested in complainant; that the fence in dispute was two feet from the centre line of this in-lot, and extended over that distance on the eastern half, which was conveyed in 1874 by Mrs. De Witt to Elizabeth Minnig, wife of defendant. It appeared also that defendant did threaten to tear down the fence; and that he and his wife had brought an action of ejectment for the strip of land. It was also in evidence that the fence had stood in its present place since 1847.

The master further reported that the testimony clearly shows that complainant has no standing in equity, as he has no title to rest upon, and continued, " I am of the opinion that the fence, the subject of the controversy here, is two feet upon the land of Mrs. Minnig at the front; * * * and that a perpetual injunction ought not to issue to restrain the defendant from removing it, and if he sees proper, placing a fence upon the true centre line of the in-lot; and that the present injunction ought to be dissolved."

The complainant excepted,

1. To the decree and finding of the master, recommending a dissolution of the injunction, and that it should not be made perpetual, as it is out of the province of the master; his duties end with finding the facts in the case.

2. To the finding of the master as incorrect, as the evidence shows the fence has stood where it now stands for over twenty-six years, and has been recognised as the line of lots by all parties and owners for that period of time, to wit, since 1848.

3. The defendant, a late purchaser, should not be allowed to destroy or remove the fence by force, but the injunction should be continued, and the defendant compelled to establish his right to the same, if he hath such right, by verdict in ejectment; that a line so long-established should not be destroyed by force and violence.

4. Disputed lines can only be settled by ejectment, not in equity nor by force.

[Minnig's Appeal.]

The court (Vincent, P. J.) overruled the exceptions, in the following opinion:—

"The owner of the land adjoining the complainant, and claimant of that on which the fence stands, has. brought an action. of ejectment for the disputed strip, and the *rights* of the respective parties will, in that suit, be determined where they should be, in a court of law; but in the meantime we have the power, and under the complaint in this case it is our duty, to prevent any violence upon the claimed rights or property of the complainant, in the interests of both peace and justice.

"The bill in this case, it is true, asks us to grant a perpetual injunction against the defendant, and, therefore, does involve the necessity of an inquiry into the titles of the respective parties, if we felt at liberty to decide upon the question of title; and in that view of the case the master was justified in reporting his opinion upon the absolute rights of the parties to this disputed strip of land; but in view of the fact that the title to this strip is now in controversy in a suit at law, we are not disposed to pass upon the question of title in this suit, and we sustain the exceptions, so far as the report advises a decree looking to such an adjudication.

"We also sustain the exception to so much of the report as advises that the injunction now in force be dissolved, for we are of the opinion that it should remain until the suit at law is decided.

"We will let stand also the question of costs until the decision of the suit at law; for upon the decision in that case may depend the proper adjudication upon the subject of costs.

"The report of the master is set aside and the injunction continued until the final decision in the case of Elizabeth Minnig and Jacob Minnig, her husband, *v.* E. E. Steurznickel, in Common Pleas of Erie county."

Defendant appealed from the decree of the court, and the third assignment, *inter alia*, was as follows:—

The court had no power to continue the special injunction after the report of the master showing and reporting that the plaintiff had no ground or cause of complaint, and no right to equitable relief.

*S. E. & T. S. Woodruff*, for appellant.—Where the right is doubtful or denied by the defendant under oath, or the injury can be repaired in damages, courts will not make use of the extraordinary power of injunction: Rhea *v.* Forsyth, 1 Wright 506; New Boston Coal & Mining Co. *v.* Pottsville Water Co., 4 P. F. Smith 164; Haines's Appeal, 23 Id. 169; Mammoth Vein Coal Co.'s Appeal, 4 Id. 183; Appeal of Brown, 12 Id. 17, 21; Hoskinson's Appeal, Pittsburgh Legal Journal of June 30th 1875; Clark's Appeal, 12 P. F. Smith 447; Schlecht's Appeal, 10 Id. 173; Kelly *v.* Long, 7 Phila. R. 455; Rhodes *v.* Dunbar, 7 P. F.

Smith 274; Tillmes *v.* Marsh, 17 Id. 508; Hieskell *v.* Gross, 7 Phila. R. 319.

*Benson & Brainerd,* for appellee, cited Hilliard on Injunctions 320; Jarden *v.* Phila., Wilm. & Balt. Railroad Co., 3 Whart. 502.

Mr. Justice MERCUR delivered the opinion of the court, January 2d 1877.

This bill charged that appellant threatened to tear down a fence, standing on the line between adjacent lots of the parties, and to remove it eighteen inches on to another line, claimed by the appellant to be the true boundary line. It prayed for a special injunction then, and upon final hearing, that the defendant be perpetually enjoined from tearing down or interfering with the fence. The special injunction was granted. The answer denied making the threats, but alleged the fence to be about two feet over on the land of the appellant's wife. It admitted that he had notified the complainant to remove it to the true line, and on his failing so to do, that he, the appellant, would remove it.

The case was referred to a master, who also acted as examiner. He found it was clearly shown, that the fence claimed by the plaintiff below to be the boundary line between them, was two feet upon the defendant's land or his wife's land. The master, therefore, was of the opinion, "that a perpetual injunction ought not to issue to restrain the defendant from removing it, and if he sees proper, placing a fence on the true centre line," and that the preliminary injunction ought to be dissolved.

On exceptions filed, the court below set aside the master's report and continued the injunction until the final decision in the action of ejectment, brought by appellant and wife, after bill filed, for the land in dispute. From the decree granting the special injunction, and continuing the same, this appeal was taken. Several errors were assigned, but the argument was substantially confined to the third assignment.

The correctness of the decree depends on whether the right of the appellee was established with sufficient certainty, and the injury threatened was irreparable.

1. A preliminary injunction is emphatically the strong arm of the court, and is never awarded except in a clear case of right, and where no doubt exists as to the claim of the plaintiff to the remedy he invokes: Brightly's Eq., § 303; Biddle *v.* Ash, 2 Ash. 211. Where the proof as to the right is so equally balanced as to leave it in doubt, the injunction should be refused until the rights of the parties are ascertained and settled: Mammoth Vein Coal Co.'s Appeal, 4 P. F. Smith 183; Brown's Appeal, 12 Id. 17. Unless it be a strong and mischievous case of pressing necessity, or the right has been previously established at law, a party cannot ask a

court of equity to enjoin: Gardner v. The Village of Newburgh, 2 Johns. Ch. R. 164; Van Beren v. Van Beren, 3 Id. 286. Where the plaintiff's right has not been established at law or is not clear, but is questioned on every ground on which he puts it, not only by the answer of the defendant, but by proofs in the cause, he is not entitled to remedy by injunction: Rhea v. Forsyth, 1 Wright 503.

2. A court of equity may interpose, in a case of trespass, to prevent irreparable mischief, and to prevent multiplicity of suits; but if the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of a court of equity: Brightly's Eq., § 295. As a general rule, mischief which is susceptible of compensation in damages is not irreparable: Brown's Appeal, supra. No decree should be made to be followed by injunction, unless irreparable injury be clearly established: Clark's Appeal, 12 P. F. Smith 447. Hence, when the owner of a hotel filed a bill to restrain the removal from it of a cooking-range set in brick work, a hot-water reservoir connected by cast-iron pipes running through the brick-work to the range, a carving-table nailed to the floor, and other fixtures of a permanent character for a hotel, it was held the bill would not lie, as they were articles of convenience only, and not of necessity, and there was an adequate remedy at law, therefore a court of equity had no jurisdiction: Ibid. It is there further said it was never intended to take away the common-law right of trial by jury, where a wrong done by a party could be redressed by it. In support of this view the learned chief justice cited numerous cases. So in Jerome v. Ross, 7 Johns. Ch. 330, in an opinion by Chancellor Kent, it was held that, for a naked trespass for which compensation could be made in money, the party must resort to his action of trespass; that an injunction will not be granted, unless there was an intention to actually destroy the subject in dispute, and not merely to injure it.

Jarden v. Phila., Wilm. & Balt. Railroad Co., 3 Whart. 502, was urged as sustaining the bill. That, however, was the case of a bill to enjoin a corporation from taking permanent possession of land before a performance of the conditions which preceded its right to possession. The street was to be opened, and the damages were to be paid. Neither had been done. The case is not analogous to the one under consideration.

Looking at the facts found by the master, the evidence not only fails to establish the right of the appellee in the fence or in the ground on which it stands, but it shows the right to both to be in the appellant. Furthermore, if the latter should remove the fence without right, the trespass would be temporary only, and could be compensated in damages. The damages recovered would replace it. While the fence was probably convenient for the complainant, it was not as necessary for the enjoyment of his lot as the fixtures

were to the enjoyment of the hotel in Clark's Appeal, *supra*. Considering the whole case, we do not think the facts gave the court jurisdiction to grant an injunction, and the learned judge erred in making the decree.

> Decree reversed, and bill dismissed at the costs of the appellee, without prejudice.