## American Chain & Cable Co. v. United Steelworkers of America, etc., et al.

*Charles B. Waller* and *Edward Darling,* for plaintiff.

*Max Rosenn,* for defendants.

VALENTINE, P. J., February 16, 1950.—The controlling legal question presented is whether section 9 of the Act of June 2, 1937, P. L. 1198, which prohibits the granting of any restraining or temporary injunction in any case involving or growing out of a "labor dispute" until after designated findings have been made, is applicable to the present case. The amending Act of June 9, 1939, P. L. 302, provides that the earlier act shall not apply in any case (a) involving a labor dispute "which is in disregard, breach, or violation of, or which tends to procure the disregard, breach, or violation of, a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employes for the purpose of collective bargaining."

Plaintiff contends that the refusal of its employes to work was in violation of the terms of a contract of employment between it and defendant union, and that the action of the employes in picketing and refusing to work amounts to a breach and violation of such labor agreement. The officers and members of the local union assert that there is no valid subsisting labor agreement between plaintiff company and the members of the union.

If plaintiff's position is correct, the proper basis for an injunction exists: Carnegie-Illinois Steel Corp. v.

United Steelworkers of America et al., 353 Pa. 420; Westinghouse Electric Corporation v. United Electrical, Radio & Machine Workers of America, etc., 353 Pa. 446; Wilbank et ux. v. Chester and Delaware Counties Bartenders, 360 Pa. 48. On the other hand, if defendants' contention is well founded, no injunctive relief should be granted.

Before the taking of testimony on the motion to continue the preliminary injunction, defendants' counsel moved to dissolve the injunction for the reason that the bill was defective. At the time fixed for argument an amended bill, correcting the defects complained of, was allowed to be filed. The question of the sufficiency of the original bill is now unimportant, for even if the conclusion was reached that it formed an insufficient basis for the granting of a preliminary injunction, the amended bill would justify the granting of a new injunction, if the evidence warranted such action.

We conclude, therefore, that the case should be disposed of on the merits. The essential facts are not seriously controverted, and may be summarized as follows:

Individual defendants are employed at the West Pittston plant of plaintiff company and are members of Local Union No. 4150 of the United Steelworkers of America. The application for membership in this organization was in the following form:

"I hereby request and accept membership in the United Steelworkers of America and of my own free will hereby authorize the United Steelworkers of America, its agents or representatives, to act for me as a collective bargaining agency in all matters pertaining to rates of pay, wages, hours of employment, or other conditions of employment, and to enter into contracts with my employer covering all such matters, including contracts which may require the continuance of my

membership in the United Steelworkers of America as a condition of my continued employment."

On September 1, 1948, a written agreement was entered into "between the Automotive and Aircraft Division, American Chain & Cable Co., Inc., West Pittston, Pa. Plant, and the United Steel Workers of America, C. I. O. on behalf of itself and the members of Local Union #4150."

This contract was signed by Philip Murray, international president, USA-CIO; Van A. Bittner, international assistant president, USA-CIO; James G. Thimmes, international assistant president, USA-CIO; David J. McDonald, international secretary-treasurer, USA-CIO; C. B. Newell, district representative, USA-CIO; Thomas J. Cann, district representative, USA-CIO; Francis J. Noone, president, local union, USA-CIO; John F. Gates, secretary, local union, USA-CIO, 4150; Joseph J. Moran, chairman of negotiating committee, USA-CIO, 4150; E. W. Van Inwegen, plant manager, American Chain & Cable Co., West Pittston plant, and provided, inter alia:

"The terms and conditions of this agreement shall continue in effect for a period of one year until September 1st, 1949, provided, however, sixty days prior to September 1st, 1949, either party may notify the other of a desire to meet in conference in W. Pittston, Pa., within 30 days following such notice the parties shall meet for the purpose of negotiating the terms and conditions of new agreement."

On August 25, 1949, a supplemental or extension agreement was executed between the American Chain & Cable Company (automotive and aircraft division) (hereinafter referred to as the company) and the United Steelworkers of America, CIO (hereafter referred to as the union), which provided:

"The agreement dated Sept. 1, 1948, between the Company and the Union is hereby extended from and

after Sept. 1, 1949 until *modified* or until terminated by either party with 15 days written notice to the other party."

This agreement was signed as follows:

"C. B. Newell, Director District #9, USA-CIO; Thomas J. Cann, Staff Representative #9, USA-CIO; David J. Williams, Jr., Chairman, Local Union #4150, USA-CIO; John F. Gates, Recording Sec'y., Local Union, #4150, USA-CIO; Girard Donnelly, Grievance Committee Chairman, Local Union #4150, USA-CIO; E. W. Van Inwegen, American Chain & Cable Co., Inc."

In November 1949 a strike occurred in the Page Steel and Wire Division of plaintiff company's plant, located at Pittsburgh. In effecting a settlement of this strike it was agreed that contracts, similar to the one executed for that plant, should be entered into for each of the other plants of plaintiff company. The agreement, in settlement of the strike at Pittsburgh, was entered into on November 17, 1949, and was signed by Philip Murray, international president, for the union, and the manager of the Pittsburgh Plant, for the company. Following the execution of this contract, the understanding that identical contracts would be entered into for the different plants of plaintiff company was confirmed in writing by E. J. Williams, vice president, in charge of production for plaintiff company, and Philip Murray, international president for the union. An agreement, dated December 8, 1949, covering the employes at the West Pittston plant, was prepared. This contract, which was never executed by any one, contained lines for the signatures of the following:

Philip Murray, international president, USA-CIO; Van A. Bittner, international assistant president, USA-CIO; James G. Thimmes, international assistant president, USA-CIO; David J. McDonald, interna-

tional secretary-treasurer, USA-CIO; C. B. Newell, district representative, USA-CIO; Thomas J. Cann, district representative, USA-CIO; president local union, USA-CIO, 4150; secretary, local union, USA-CIO, 4150; chairman of negotiating committee, USA-CIO, 4150, and American Chain & Cable Co., West Pittston plant, E. W. Van Inwegen, plant manager.

On December 15, 1949, Thomas J. Cann, staff representative of the United Steelworkers of America, CIO, wrote David Williams, president of Local Union 4150, as follows:

"This is to advise you that the contracts have been received from Mr. Van Inwegen, on the old age pension and social insurance, for your signature and the signature of the official family.

"Will you kindly drop in our office at your convenience and sign these contracts, so that I may be able to send them in for the other signatures."

The bargaining agent, authorized to represent the employes of the West Pittston Plant, as members of local union no. 4150, was the "United Steelworkers of America". The officials and members of local union 4150 form a part of the United Steelworkers' union. This clearly appears from paragraph 2 of the bill. Article XVII, sec. 3 of the constitution of the International Union, United Steelworkers of America, CIO, offered in evidence, provides:

"The International Union and the Local Union to which the member belongs shall act exclusively as his agent to represent him in the presentation, maintenance, adjustment and settlement of all grievances and other matters relating to terms and conditions of employment or arising out of the employer-employee relationship."

We think that in the execution of labor agreements, joint action is contemplated by the international union, and the local union, and that only when a contract has

been executed jointly by representatives of the two bodies does it become a "valid subsisting labor agreement".

The original labor agreement, dated September 1, 1948, was executed by both the executive officers of the international body and the officers of local union no. 4150. So also, the extension agreement of August 25, 1949, was signed by the officers or representatives of both bodies.

The contract of November 17, 1949, between the Page Steel and Wire Division of plaintiff company, and the United Steelworkers of America, is signed by Philip Murray, international president, for the union, and by the plant manager of plaintiff company. It covered but one plant, but was intended to be used as a form of proposed contract to be submitted to and executed for and on behalf of plaintiff's employes (members of the steelworkers' union), who were employed at the various other plants operated by the company, with the understanding that in some instances slight changes or modifications were to be made. That this is what the parties, viz., the officers, or at least the president of the international body, and the officials of plaintiff company, contemplated clearly appears from the letter of November 17, 1949, from the company to the United Steelworkers of America, and confirmed by Philip Murray, international president, wherein it is set forth:

"It is understood that identical agreements *will be entered into between the union and* York E. W. plant, York foundry, Wright-Manley, Reading plant, Wilkes-Barre plant, *West Pittston plant*, Camden plant, Baltimore plant and Braddock plant; provided, that with respect to the York and Camden plants rider attached will be affixed to the definition of 'Continuous Service' contained in the applicable pension and insurance agreements."

Such intention is also shown by the fact that a form of contract, designed to cover the employes of the West Pittston Plant, was prepared with designated places for the signatures of officers of the international body and of the local union, which contract was never executed.

It is true that if the president of the international union had sole and exclusive authority to sign a contract for the local union 4150, which would be binding upon all of the members, and that all the terms and conditions were embraced in such a contract executed by the president, the employes would be bound thereby. But such is not the case. The language of the letter of November 17, 1949, to which we have referred, clearly indicates that the understanding between Murray, representing the international body, and Williams, representing plaintiff company, was that a formal instrument or writing was to be executed for every plant before the labor contracts were deemed complete. Such being the case, as the proposed contract covering the West Pittston plant was never executed, the employes are not bound by the terms of the agreement embraced in the contract between the Page Steel & Wire Division of plaintiff company, and Mr. Murray, representing the union, which applied to the Pittsburgh plant: Northwestern Milling Co. v. Campbell, 78 Pa. Superior Ct. 96.

"Where a preliminary agreement is incomplete, and it is apparent that the determination of certain details is deferred until a writing is made out, or an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract": Upsal Street Realty Company v. Rubin, 326 Pa. 327.

Nor can we conclude that the international president of the United Steelworkers of America could, by his

598

signature alone, execute a "valid subsisting labor agreement" binding upon hundreds and perhaps thousands employed at various plants, because the workers had designated the union, of which he is head, to represent them as bargaining agent; especially where, as here, the executed agreement, in fact, related to but one plant and the intention was that separate contracts, covering each plant, were to be executed.

Plaintiff further contends that inasmuch as the officers of local union #4150 did not give the 15 days' notice of the proposed termination of the contract of September 1948, as extended by the agreement of August 25, 1949, this contract remained in force and is a "valid subsisting labor agreement". The extension agreement provided that the earlier contract should be extended "after September 1st, 1949, *until modified* or *until terminated* by either party with fifteen days written notice to the other party."

In November 1949 the vice president of plaintiff company, in charge of production, negotiated with the international officers of the steelworkers union for a modification of the contract of employment at the West Pittston plant. These negotiations terminated in an agreement as set forth by the vice president under date of November 17, 1949, and confirmed by Philip Murray, international president of the steelworkers' union, that an agreement identical with that executed by the Pittsburgh plant would be entered "into by the Union and . . . the West Pittston Plant."

This was, in effect, a statement by the vice president of plaintiff company that an understanding had been reached for a modification of the earlier agreement of September 1948. His conduct was a waiver of the company's right to insist upon the 15 days' notice specified as prerequisite for its termination. The original bill (paragraph 5) based plaintiff's claim for an injunc-

tion upon the agreement made as a result of such negotiations, and executed on behalf of plaintiff company by its vice president, and on behalf of the union by the international president. This claim is reasserted in detail in the amended bill (paragraph 15).

Injunctive relief should only be granted in clear cases, reasonably free from doubt: Audenried v. The Philadelphia & Reading Railroad Co., 68 Pa. 370; Minnig's Appeal, 82 Pa. 373.

The evidence presented fails to clearly establish that the acts sought to be enjoined are in violation of a valid subsisting labor contract.

Therefore, now, February 16, 1950, the motion to continue the preliminary injunction is refused, and the injunction heretofore granted is dissolved.