## Edmunds et al. *v.* Duff et al., Appellants.

*Injunctions—Nuisance — Open-air amusement park — Noise — Music—Crowds—Parties—Change of venue.*

1. No man has a right to take from another the enjoyment of the reasonable and essential comforts of life and, consequently, cannot commit acts on his own premises calculated to interfere with the reasonable enjoyment by others of their homes.

2. Any noise, whether of musical instruments or the human voice or by mechanical means, or however produced, may be a nuisance, especially if its tendency is to draw together in the vicinity of a person's residence or place of business, large crowds of noisy and disorderly people.

3. An injunction will be granted to restrain the proposed construction of an open-air amusement park designed to increase the business of a street railway company, where the evidence shows that the park would be open for nearly six months in the year, that it was intended to include music pavilions, merry-go-rounds, scenic railways, swings, shooting galleries, dance halls, restaurants, mo-

## 356 EDMUNDS et al. v. DUFF et al., Appellants.

tion pictures, electric fountains and similar attractions calculated to gather large and noisy crowds.

4. Although an injunction will not be granted where the injury is based merely on apprehension as to future damages, yet if it be shown reasonable grounds exist to believe the proposed construction will result in a nuisance, and it is reasonably certain the health or comfort of complainants will be harmed by the threatened act, the court will decree immediately to restrain such acts, and particularly is this so where the grounds of belief are based upon the testimony of the defendants.

5. Where the question is one of interference with the enjoyment of private homes by reason of noises, attractions of large crowds, or the operation of a business or industry tending to render the immediate community a less desirable place in which to live, the resulting injury is such as necessarily affects practically all persons who happen to be living in the immediate neighborhood, and are nearest to the source of annoyance and this necessarily secures to them rights they have a standing in equity to protect.

6. In such case a change of venue will not be granted on the ground that a large number of inhabitants had an interest in the question adverse to the defendants, where it appears that the case is not one to be tried by a jury, and that the trial judge states that he will not be influenced by the grounds referred to in the application for change of venue.

7. A decree against defendants will not be reversed because of the refusal of a change of venue, if it appears to the appellate court that there had been a fair and impartial trial, and that the decree was based not so much on the testimony of the residents of the community, as upon evidence produced by the cross-examination of the defendants' officers.

Argued February 26, 1924. Appeals, Nos. 238-246, by Franklin D. Edmunds et al., from decrees of C. P. Del. Co., June T., 1921, Nos. 240, 243 and 246, on bills in equity in cases of Franklin D. Edmunds et al. v. John T. Duff, Jr., Willow Grove Park Company and Phila. Rapid Transit Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bills for injunction to restrain erection of amusement park. Before JOHNSON, P. J.

The opinion of the Supreme Court states the facts.

The plan below shows the locality.

Decree for plaintiff.   Defendants appealed.

*Errors assigned* were, inter alia, (59) decree, quoting it, and (61) refusal of change of venue, quoting record.

*James Gay Gordon,* with him *Albert J. Williams, Coleman J. Joyce* and *Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Madeira,* for appellants.—An injunction should not issue against the construction of a proposed amusement park as an anticipated nuisance where the only valid testimony as to buildings is that there

will be a music pavilion and a casino and other struc-tures, undescribed as to kind, location or use, for the entertainment of the people, and where testimony as to noises, crowds, lights, etc., is based solely upon the fears and apprehensions of complainants' witnesses: Spar-hawk v. Ry., 54 Pa. 401; Rhodes v. Dunbar, 57 Pa. 274; Phila.'s App., 78 Pa. 33; Robb v. Carnegie, 145 Pa. 324; Hough v. Doylestown, 4 Brewster 333; Thoenebe v. Mosby, 257 Pa. 1.

An injunction will not be sustained restraining the construction of an amusement park on bills of private citizens where the evidence, if it establishes an antici-pated nuisance at all, shows that it would be a public one: Sparhawk v. Ry., 54 Pa. 401; Rhymer v. Fretz, 206 Pa. 230; Alexander v. Coal Co., 254 Pa. 1; Wilson v. Blaine, 262 Pa. 367; Phillips v. Donaldson, 269 Pa. 244.

Change of venue should have been granted: Brittain v. Monroe County, 214 Pa. 648.

*T. R. White,* with him *Howard M. Lutz, Harry J. Makiver, William C. Alexander, Parker S. Williams* and *W. Roger Fronefield,* for appellees.—The conclusion of the court below that the proposed open-air amusement park would constitute a nuisance was based on evidence, not only competent, but overwhelming in its force: Myersdale Street Ry. v. Ry., 219 Pa. 558; Artis v. Gerst, 238 Pa. 462; McClintic-Marshall Co. v. Trust Co., 248 Pa. 584; Hull v. D. & H. Co., 255 Pa. 233; Edison Elec-tric Co. v. Tamaqua Co., 13 Pa. Dist. R. 86.

The neighborhood was residential in character: Krocker v. Planing Mill Co., 274 Pa. 143.

It follows from the court's findings that the operation of the proposed park would necessarily be a nuisance: Krocker v. Planing Mill Co., 274 Pa. 143; Prendergast v. Walls, 257 Pa. 547; Eckels v. Weibley, 232 Pa. 547; Ladies Decorative Art Club, 22 W. N. C. 75.

Plaintiffs were entitled to maintain an action for in-junction to restrain the threatened nuisance.

The court below properly refused the motion for change of venue.

OPINION BY MR. JUSTICE FRAZER, April 28, 1924:

Three separate bills in equity were filed against the Willow Grove Park Company, the Philadelphia Rapid Transit Company and John T. Duff, Jr., to restrain the construction and operation of an amusement park on land situated in Delaware County, known as the Burd Orphan Asylum Tract and a part of an adjoining tract known as "Elim," both adjacent to the western boundary of the City of Philadelphia. The bills raise practically the same questions and will be considered in one opinion. The basis of the complaint in each proceeding is that the district surrounding the proposed park is residential and the operation of a place of amusement, such as here contemplated, in that locality, would constitute a nuisance by reason of its interference with the comfort and enjoyment of their homes by residents of the neighborhood. Duff answered averring that before the bills were filed he conveyed his entire interest in the properties to the Willow Grove Park Company. The Rapid Transit Company's answer denied intention to erect an amusement park on the tract, admitting, however, it owned or controlled the stock of the Willow Grove Park Company. The latter company answered admitting it proposed constructing an amusement park, but denied intention to maintain amusement devices objectionable to residents of the community, or which could be classified as a nuisance. Petitions by residents of the neighborhood for leave to intervene were filed until the number of complainants were over 140. At the hearing a large number of witnesses were called and the printed record covers more than 1,500 pages. The court below, after an elaborate review of the testimony, concluded the averments of the bills were sustained by the evidence and that the establishment and operation of the proposed amusement place would be a nuisance to the residents of the neigh-

borhood and, accordingly, granted an injunction restraining defendants from erecting and operating a park of the character proposed. Defendants appealed.

The court found the neighborhood to be an exceptionally quiet one and well adapted for residential purposes and that the entire vicinity was rapidly developing as such. On the north side of the tract intended to be used for amusement purposes, and on the opposite side of the West Chester Pike, are located 103 private dwellings within what is known as the Borough of Millbourne. On the west side are a number of private dwellings fronting directly on the proposed park and adjoining these are many other homes owned and occupied by persons of moderate circumstances, aggregating about 300. On the east the tract is bounded by Cobbs Creek Park, a narrow strip of land bordering on Cobb's Creek, on the opposite side of which, fronting on the park and within the City of Philadelphia, are many private homes, this section being almost exclusively residential. To the southward the land is not closely built up but contains a few private dwellings. The Millbourne Flour Mills are near the tract, northeast of Millbourne Borough with a branch railroad connection upon which are located a freight station and lumber yard. Notwithstanding this, however, the testimony and exhibits show the neighborhood is generally building up as a residential one and the business district confined mainly to the portion along the principal highway. On the whole, the evidence fully warrants the conclusion reached by the court below as to the character of the neighborhood. The question raised must, therefore, be viewed as one where it is proposed to establish an amusement park in the heart of what is rapidly developing as a residential section.

Defendants contend the evidence is insufficient to show an intent to construct or operate in the proposed park any amusement device classed as a nuisance, or which would interfere with plaintiffs' enjoyment of their

homes.   It is admitted the Willow Grove Park Company is a corporation organized for the purpose of constructing, maintaining and operating amusement parks and that it is the purpose and object of the company "to supply a place of recreation, entertainment and instruction ......consisting of the production of opera, drama, organ recitals and vocal concerts," and, in addition thereto, "to construct and operate various high-class amusements, especially such as are intended for the recreation of the people for the spring and summer months."

In view of the fact that the work had not actually begun, plaintiffs, to show the meaning of the words "high-class amusements," were obliged to rely mainly on such facts as might be disclosed by cross-examination of the officers of the Willow Grove Park Company and the Philadelphia Rapid Transit Company.   With this in view they called, on cross-examination, the president of the latter company, who, in response to a subpœna, produced a tentative draft of a development plan for the tract in question.   On this plan were shown numerous entertainment devices such as an open-air theater, picnic pavilion, aerial swing, carrousel, theater, dancing pavilion, scenic railway, house of mirth, rifle range, topsy-turvey land, whip, dodge-em, and playgrounds, all being amusement devices commonly found in parks of the character proposed and similar to those maintained and operated in defendants' Willow Grove Park located in Montgomery County, frequently referred to in the testimony, and which defendants claim is on as near an ideal plan as possible to maintain a park of this description. The contention of defendants is that the plan was merely tentative and not prepared at their suggestion, or by anyone on their behalf, so far as the particular amusement devices were concerned, but that it was the personal idea of an expert in park planning to whom application had been made for a suggestion as to developing the property.   In the course of his testimony the president of the Philadelphia Rapid Transit Company

admitted intention to construct an open-air amusement park on the property in question and that the purpose was to provide amusements calculated to attract to the park inhabitants of the City of Philadelphia and its surroundings over the lines of the Philadelphia Rapid Transit Company. While he carefully avoided making direct admission as to the precise nature of the amusements, a careful reading of his testimony indicates the intention undoubtedly is to establish such general amusements as are found at the Montgomery County Willow Grove Park. The witness repeated over and over again that "music would be the predominating note." He carefully disclaimed all responsibility for the devices indicated on the plan, although admitting it had been made by an expert and revised in the office of his company. In answer to the direct question whether it was intended to install any or all of the amusements specified on the plan, his only answer was that nothing had as yet been considered or determined. He conceded, however, that what was proposed was an amusement park; that in order to attract people to the park it would be necessary to provide not only music but other general open-air amusements; that they had successfully operated their Willow Grove Park with music as the dominating feature and the main attraction and that as a business proposition they recognized the fact that music alone would not attract the people in sufficient numbers to make the enterprise a paying investment, but that other inducements must be provided and that the nature of these attractions depend on the class of people who visit the park; that the object was to use the property as a means of increasing revenue for the Philadelphia Rapid Transit Line and that to do this the property must be provided with amusements best suited to attract and please patrons. In view of all the circumstances and admissions as to the purpose of the park, it is useless for defendants to attempt to deny that it would contain amusement features similar to those contained in other

parks of this character, notably the Montgomery County Willow Grove Park, now operated by defendants; and the evasive answers given by the witness are not calculated to impress the court with the merits of the defense set up. These remarks apply also to the testimony of the president of the Willow Grove Park Company. Here, too, we find a studied evasion of statements the witness evidently thought might prove damaging to the defense offered and a repeated resort on his part to the subterfuge that nothing definite had been decided upon and the character of amusement features to be eventually installed could not be stated exactly. Under all the evidence, the court below properly found that to construct and maintain an amusement park, such as defendants contemplate, will include music pavilions, merry-go-rounds, scenic railways, swings, shooting galleries, dance halls, restaurants, lunch counters, soft drink stands, motion pictures, theaters, electric fountains and electric lights, or other similar devices, calculated to draw large numbers of people, and, as such is the purpose of the park, the above-named devices, or similar attractive ones, must necessarily be installed; that, if the park were established and operated, great numbers of persons would be attracted there both day and night during seven days of the week, for approximately six months of the year, many of whom would not confine themselves to the enclosed ground but invade the immediate surroundings to the annoyance, discomfort, injury and inconvenience of plaintiffs and that the operation of a place of amusement, such as that proposed, is necessarily accompanied by continuous disturbances, including the noise of music, merry-go-rounds, scenic railways, shooting galleries and other amusement devices, and also the noises and usual glamor created by crowds of people frequenting the park, including loud talking, laughing and shrieking, particularly in connection with the use of certain amusement contrivances, notably scenic railways, merry-go-rounds, etc.

No man has a right to take from another the enjoyment of the reasonable and essential comforts of life and, consequently, cannot commit acts on his own premises calculated to interfere with the reasonable enjoyment by others of their homes.   Even music, however elevating and enjoyable at times, and depending, of course, on its character, may be continued so long as to become an annoyance to those compelled to remain in the immediate vicinity.   In fact, the general trend of decisions has been to hold that any noise, whether of musical instruments or the human voice, or by mechanical means, or however produced, may be a nuisance, especially if its tendency is to draw together in the vicinity of a person's residence or place of business large crowds of noisy and disorderly people: Attorney General v. Sheffield Gas Co., 22 L. J. Ch. 811; Inchbald v. Barrington, L. R. 4 Ch. App. 388; Walker v. Brewster, L. R. 5 Eq. Cas. 31.   See also Phelps et al v. Winch et al., 309 Ill. 158; S. C. 28 A. L. R. 1169.

In Inchbald v. Barrington, supra, it is said: "It is clear from the evidence before us......that the music and noises in the circus were distinctly heard all over the plaintiff's house for several hours every night.   This was something materially interfering with the comfort of the inhabitants according to the ordinary habits of life, and I am of opinion that the injunction......was rightfully granted."   In Walker v. Brewster, supra, an injunction was asked to restrain the holding on open ground displays of fireworks and fetes in connection with which there was music and dancing and other entertainments, whereby a large number of persons were attracted to the neighborhood in which plaintiffs resided.   In the course of the opinion by the vice chancellor, it was said: "It appears to me that a clear case of nuisance is established in the collecting of the crowd alone......Having regard to the fact of this court having restrained the ringing of bells, I confess I have a strong opinion that the setting up of a powerful brass band, which plays twice a week for several hours in the immediate vicinity

of a gentleman's house, is a nuisance which this court would restrain. I have a still clearer opinion that the noise of fireworks as contrasted with the ringing of a bell, to say nothing of the damage that may be occasioned by the falling rocket sticks, is a serious nuisance. But that the collection of crowds is a nuisance has been fully established; and, in the neighborhood of a populous town, the letting off of fireworks and the performance of powerful bands will collect together crowds as a necessary and not merely a probable consequence." In Snyder v. Cabell, 29 W. Va. 48, a skating rink erected near a dwelling was held to be a nuisance as interfering with the comfort and enjoyment of the inhabitants of the dwelling, and it has been held frequently that a merry-go-round accompanied by a band and attended by a large and boisterous crowd was a nuisance: Town of Davis v. Davis, 40 W. Va. 464; Osthaus v. Robinson, 12 Pa. Dist. R. 25. The playing of baseball games in the vicinity of dwellings has been restrained on the ground of being a nuisance because of tendency to collect on the highways noisy and disorderly crowds: Seastream v. N. J. Exhibition Co., 58 Atl. 532; Gilbough v. Westside Amusement Co., 64 N. J. Eq. 27. In the last cited case we find the following pertinent remarks by Vice-Chancellor PITNEY (page 28): "That mere noise may be so great at certain times and under certain circumstances as to amount to an actionable nuisance and entitle the party subjected to it to the preventive remedy of the court of equity is thoroughly established. The reason why a certain amount of noise is or may be a nuisance is that it is not only disagreeable, but it wears upon the nervous system, and produces that feeling which we call 'tired.' That the subjection of a human being to a continued hearing of loud noises tends to shorten life is, I think, beyond all doubt. Another reason is that mankind needs rest and sleep, and noise tends to prevent both."

It is also argued that the injury was prospective only and that as no immediate injury to plaintiffs was shown,

an injunction should not be granted merely to allay fears and apprehensions of plaintiffs, concerning something which might or might not happen in the future. Although true an injunction will not be granted where the injury is based merely on apprehension as to future damages, yet, if it be shown reasonable grounds exist to believe the proposed construction will result in a nuisance, and it is reasonably certain the health or comfort of complainants will be harmed by the threatened act, the court will decree immediately to restrain such acts: Eckels v. Weibley, 232 Pa. 547. The testimony in this case establishes to the satisfaction of the court that the park which defendants proposed to construct and operate would necessarily result in a nuisance to the residents of the surrounding neighborhood. This being so, it is a proper case for an injunction without waiting until the amusement place is in actual operation.

It is further contended the resulting nuisance, if any, will be a public one; accordingly, not one plaintiffs individually can restrain. The rule unquestionably is that a private action for a public nuisance can be maintained only by one suffering a particular loss or damage beyond that suffered by all others affected by the nuisance and that interference with a common right does not in itself afford a cause of action on the part of an individual: Alexander v. Coal Co., 254 Pa. 1. Where, as here, the question is one of interference with the enjoyment of private homes by reason of noises, attraction of large crowds, or the operation of a business or industry tending to render the immediate community a less desirable place in which to live, the resulting injury is such as necessarily affects practically all persons who happen to be living in the immediate neighborhood and are nearest to the source of annoyance and this necessarily secures to them rights they have a standing in equity to protect. This may be illustrated by numerous cases involving the location and operation in residential communities of various classes of business, such as mills,

factories, public garages, etc. Relief in such cases has been invariably given individual residents of the neighborhood especially injured thereby, regardless of the fact that the acts complained of may also have amounted to a public nuisance and liable to be dealt with as such.

Complaint is finally made that the court below erred in refusing to grant a change of venue on application of defendants on the ground that a large number of inhabitants of the county had an interest in the question adverse to that of defendants and for such reason defendants would be deprived of a fair and impartial trial within the county. At the time the petition for change of venue was presented defendants asked leave to take evidence in support of the averments it contained. The court refused · the application on plaintiffs' admitting the statements set out, except the conclusion set forth that a fair trial could not be had within the county. Defendants then applied for a continuance which was also refused for the reason that there was nothing in the petition for a change of venue or in the application for a continuance in any way tending to influence the decision of the court.

We find nothing in the record to convince us that the court below abused its discretion in refusing both motions. The Act of March 18, 1909, P. L. 37, provides that a change of venue shall be granted in any case where, inter alia, a large number of the inhabitants of the county have an interest adverse to the applicant and "it shall appear to the court that he cannot have a fair and impartial trial." Evidently from the number of parties to these proceedings, and witnesses who testified in the case, a large number of inhabitants of the county have an interest in the question involved and had this question been one to be submitted to a jury it may well be that the interest was so widely extended as to render difficult the selection of an unbiased jury to try the facts. The testimony, however, was taken before the court, whose duty it is to pass upon the facts, and, in view of the statement

by the court that none of the matters referred to in the petitions would in any way influence its decision, we have no reason to believe defendants did not have a fair and impartial trial. It may also be observed that the only substantial dispute of fact in the case was concerning the nature of the amusement devices defendants proposed to install in the park and this did not depend upon the testimony of plaintiffs' witnesses secured from the residents of the community, but upon evidence produced by cross-examination of defendants' officers and, as has been already pointed out, the testimony of those officers was not such as to convince the court of the merits of the defense that no features or devices of a nature objectionable to residents of the community would be installed or maintained in the park.

The decree of the court below in each appeal is affirmed at appellant's costs.