378

Commonwealth *v.* Guild Theatre, Inc. et al.,
Appellants.

Argued October 7, 1968. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, O'Brien and Roberts,
JJ.

*Hubert I. Teitelbaum,* with him *Martin M. Shein-man, Sidney Silverblatt, Edmund C. Grainger,* of the New York Bar, and *Morris, Safier & Teitelbaum,* for appellants.

*Gerald C. Paris,* Assistant District Attorney, with him *Louis Abromson,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Common-wealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 12, 1968:

The defendants, appellants here, are the Guild Theatre, Inc., and S. Ralph Green and Millard B. Green, officers of the defendant corporation. On July 16, 1968, the appellants began the exhibition of the motion picture, Therese and Isabelle. Late in the afternoon of July 19, 1968, the District Attorney of Allegheny County filed a complaint in equity alleging that the movie was obscene and requesting an injunction restraining the defendants from exhibiting the movie. Appellants received no notice of the filing of the complaint, nor of the hearing which took place later that evening before Judge BROSKY. Apparently there was some testimony that the picture was obscene, but there is no record of that ex parte hearing. An injunction against the showing of the movie was issued, and the District Attorney proceeded to the theater around ten o'clock in the evening to close the movie. A hearing on a final injunction was set for July 23, 1968, at

which time appellants' counsel requested a continuance to study the problem. On July 30, 1968, appellants' counsel filed preliminary objections, raising several objections to the procedure followed. These included assertions that: (1) An injunction should not have been issued without notice. (2) An injunction should not have been issued to restrain the showing of a motion picture without a prior determination of obscenity in an adversary judicial proceeding. (3) The District Attorney had no authority to file the complaint in equity. (4) There was a complete and adequate remedy at law. Oral argument was had before Judge WEIS on these preliminary objections, at the conclusion of which oral argument the court requested the District Attorney to file a brief by August 2, 1968. On Monday, August 5, 1968, further argument was held following which the court delivered an oral opinion from the bench overruling the preliminary objections, holding that the District Attorney had the power to enjoin an obscene movie as a public nuisance. Although the court expressed its readiness to proceed to the merits of the obscenity question, the defendants chose to appeal to this Court.[1]

We hold that the court below erred in granting the injunction and overruling the preliminary objections. The procedure followed in this case was shockingly defective in at least two respects—the hearing without notice on the evening of July 19th, and the censorship without provision for a prompt judicial decision.

The hearing which transpired on July 19, 1968 was reminiscent of the Star Chamber proceedings of yore.

---

[1] The Act of February 14, 1866, P. L. 28, §1, 12 P.S. 1101, provides for appeals from the grant of preliminary injunctions. Although that section further provides that the pendency of the appeal shall not suspend the proceedings in the court ·below, apparently no further move to proceed with the merits was made by anyone.

It was held ex parte, and no record was made of those proceedings. Without desiring to impugn the motives of any who participated in these proceedings, it must be apparent that such practices must not be allowed to continue. Rule 1531(a) of the Pennsylvania Rules of Civil Procedure provides: "A court shall issue a preliminary injunction *only after written notice and hearing* unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held . . ." (Emphasis ours). Here no attempt to give notice was made. In the several hours that elapsed between the filing of the complaint and the hearing, it may well have been possible to give notice. In any event, the viewing of the motion picture by a few hundred people could hardly constitute such irreparable injury as to justify the abandonment of the precious safeguard of an adversary hearing, and the granting of an injunction, without even a bond to protect appellants' financial position.

However, even if a proper hearing had been held, the instant proceeding was fatally defective in another respect. There is no doubt that motion pictures are protected by the constitutional guarantee of freedom of speech. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S. Ct. 777 (1952). It is true that obscenity is not within the purview of the protections of the First and Fourteenth Amendments. *Roth v. United States,* 354 U.S. 476, 481, 77 S. Ct. 1304, and a long line of cases cited therein. However, the very question at issue here is whether this picture is obscene, and until it is judicially so adjudged, it is indeed entitled to those protections. The procedures involved must be "adequate to avoid suppression of constitutionally protected publications . . . [T]he line between speech unconditionally guaranteed and speech which

may legitimately be regulated, suppressed or punished is finely drawn, . . . The separation of legitimate from illegitimate speech calls for . . . sensitive tools." *A Quantity of Books v. Kansas,* 378 U.S. 205, 212, 84 S. Ct. 1723 (1964); *Marcus v. Search Warrant,* 367 U.S. 717, 730, 81 S. Ct. 1708 (1961). Although we cannot agree with appellants' contention that no prior restraint on the exhibition of a motion picture is permissible, it is clear that any such restraint must be very carefully circumscribed. In *Freedman v. Maryland,* 380 U.S. 51, 58, 85 S. Ct. 734 (1965), the Supreme Court discussed the "procedural safeguards designed to obviate the dangers of a censorship system." One of these safeguards was a prompt, final judicial decision. Just this year, the High Court struck down as unconstitutional a Chicago censorship ordinance because, among other things, it lacked such a provision for a prompt judicial decision. *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 88 S. Ct. 754 (1968). See also *Smith v. Crumlish,* 207 Pa. Superior Ct. 516, 523, 218 A. 2d 596 (1966). The fact that appellants may have been offered a full dress *hearing* within four days of the original restraint does not suffice. Quite clearly, there is no provision for a prompt *decision.* It is vital that the continuance of First Amendment freedoms not be dependent upon the efficiency of a particular judge but upon procedural safeguards clearly embodied in a statute. We can only suggest, as did the Court in *Freedman,* supra, that a model for such a statute which can safeguard both the First Amendment freedoms of exhibitors and publishers, and the freedom from obscenity of society as a whole can be found in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S. Ct. 1325 (1957). The New York statute there provided for a trial within one day after joinder of issue and a decision within two days of the conclusion of the trial. The instant procedure falls far short of that required.

The injunction is vacated. Each party to bear own costs.

Mr. Justice MUSMANNO did not participate in the decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I agree that due process was violated in this case and, therefore, the decree entered below must be vacated. This is so because no prior notice of the proceedings was given to the defendants and all opportunity to be heard was denied before the court acted. The existing circumstances did not justify such procedure.

Equally important is the fact that no record was made of the hearing in the court which issued the injunction. Who testified and what testimony was given is left to guess and conjecture. Whether or not the court acted within permissible legal and constitutional limits is impossible to determine.

I would not only vacate the decree, but also would remand the record with directions to the court below to promptly conduct a hearing in accordance with the requirements of due process.

Mr. Chief Justice BELL and Mr. Justice JONES join in this concurring opinion.