**H. L. GUNDLACH, York, Pennsylvania, Plaintiff,**

**v.**

**John F. RAUHAUSER, Jr. in his capacity as District Attorney for the County of York, Commonwealth of Pennsylvania, Defendant.**

**Civ. No. 69–343.**

United States District Court
M. D. Pennsylvania.

Oct. 21, 1969.

McNees, Wallace & Nurick, Harrisburg, Pa., Robert E. Smith, Towson, Md., for plaintiff.

John T. Miller, Asst. Dist. Atty. of York County, York, Pa., Edward Friedman, Counsel General, Com. of Pa., Harrisburg, Pa., for defendant.

Before MARIS, Circuit Judge, and SHERIDAN and NEALON, District Judges.

PER CURIAM.

In this action, Herbert L. Gundlach seeks injunctive and declaratory relief against John Rauhauser, Jr., District Attorney of the County of York, Pennsylvania. At issue are the actions instituted in the York County Common Pleas Court by the District Attorney under the Pennsylvania Obscenity Statute, 18 P.S. § 4524 (Supp. 1969), seeking to restrain plaintiff from the further sale and distribution of certain "adult type" publications and materials. Because the plaintiff sought a declaratory judgment that Pennsylvania's Obscenity Statute, supra, violates the United States Constitution, a statutory Three-Judge Court, 28 U.S.C. § 2281, was convened and the matter heard on September 18, 1969, due notice having been given to the Governor and Attorney General of Pennsylvania.

A brief recital of the history of this case is appropriate.

On Friday, August 29, 1969, District Attorney Rauhauser instituted an equity action in the Court of Common Pleas of York County against H. L. Gundlach, trading and doing business as H & G Enterprises, Superb Sales, and Feature Publications, pursuant to Section (g)[1] of

---

1. "(g) The district attorney of any county in which any person sells, lends, distributes, exhibits, gives away or shows, or is about to sell, lend, distribute, exhibit, give away or show, or has in his possession with intent to sell, resell, lend, distribute, exhibit, give away or show, any obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper, comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, may institute proceedings in equity in the court of common pleas of said county for the purpose of enjoining the sale, resale, lending, distribution, exhibit, gift or show of such obscene literature, book, magazine, pamphlet, newspaper, storypaper, paper comic book, writing, drawing, photograph, figure or image, or any written or printed matter of an obscene nature, or any article or instrument of an obscene nature, contrary to the provisions of this act, and for such purposes jurisdiction is hereby conferred upon said courts. A preliminary injunction may issue and a hearing thereafter be held thereon in conformity with the Rules of Civil Procedure upon the averment of the district attorney that the sale, resale, lending, distribution, exhibit, gift or show of such publication constitutes a danger to the welfare or peace of the community. The district attorney shall not be required to give bond." 18 P.S. § 4524(g) (Supp.1969).

the Pennsylvania Obscenity Act, supra. In the complaint Gundlach was charged with selling and distributing certain obscene publications which were named or referred to in exhibits attached to the complaint and it was further averred that such conduct constituted a danger to the welfare and peace of the community of York County. Upon the filing of the complaint and on motion of the District Attorney, without notice to Gundlach, a preliminary injunction was entered by Honorable George W. Atkins, President Judge of the York County Court of Common Pleas, restraining and enjoining Gundlach, his agents, servants and employees from "selling, distributing, giving away, or causing to be sold, distributed, or given away any of the publications of the kind attached to the Complaint \* \* \*" and fixing September 3, 1969, at 1:30 P.M., as the time and place for a hearing to determine whether the injunction should be continued. Service was made on the Secretary in charge of the plaintiff's place of business in York on the afternoon of August 29, 1969, but the copy of the Order of the Court issued by Judge Atkins and served on plaintiff's Secretary inadvertently omitted the time and date of hearing on the District Attorney's motion to continue the injunction. Although plaintiff learned of the September 3, 1969, Court hearing in a York newspaper, he failed to appear for the hearing on that date, at which time the Court heard evidence presented by the District Attorney and continued its preliminary injunction pending final hearing. It was on this date that Mr. Gundlach instituted the present suit in Federal Court. On September 10, 1969, Honorable William J. Nealon, sitting as a single Judge pursuant to 28 U.S.C. § 2284(3), denied plaintiff's motion for a temporary restraining order. A hear-

ing was held before the Three-Judge panel on September 18, 1969, and defendant's motion for stay of proceedings was denied. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In addition, all parties agreed that this hearing would suffice as a final hearing on the merits.

It will be noted that Section (g) of the Pennsylvania Act authorizes the District Attorney to institute proceedings in equity for the purpose of enjoining the sale and distribution of any written or printed matter of an obscene nature. Moreover, Section (g) specifically provides for the issuance of a preliminary injunction, ex parte, upon the averment of the District Attorney that the sale or distribution of such publication constitutes a danger to the welfare or peace of the community. Thereafter, a hearing is to be held in conformity with the Rules of Civil Procedure. Plaintiff contends, in this action, (a) that Section (g) of the Pennsylvania Obscenity Statute violates the First Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment, and (b) that the publications and materials involved herein are not obscene in the constitutional sense as a matter of law.

We need only consider point (a) as it is apparent that Section (g) is defective in that it provides for the issuance of a preliminary injunction, without notice, in an area involving "basic freedoms guaranteed by the First Amendment" and, further, that it fails to establish the necessary procedural safeguards to insure prompt and final judicial decision. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).[2] In the Carroll case, a unanimous Supreme Court

---

2. No attempt was made to establish—and indeed no suggestion has even been advanced—that it was impossible to serve or notify the plaintiff on August 29, 1969, so that the plaintiff could participate when the District Attorney first obtained a preliminary injunction from the York County Courts. It is immaterial that he was able to participate at the hearing scheduled for September 3, 1969. This is particularly so, in this case, since the plaintiff was served with a defective Order from the York County Court.

invalidated an ex parte restraining order issued againt the National States Rights Party, forbidding them for a period of ten days from holding rallies or meetings in Princess Anne County, Maryland. The Supreme Court there stated that:

"There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.

\*　\*　\*　\*　\*　\*

" \*　\*　\* '[a] system of prior restraints comes to this Court bearing a heavy presumption against its constitutional validity.' Bantam Books Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Freedman v. Maryland, 380 U.S. 51, 57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). And even where this presumption might otherwise be overcome, the Court has insisted upon careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit. As the Court said in Freedman v. Maryland, supra, at 58, 85 S.Ct. 734, a non-criminal process of prior restraints upon expression 'avoids constitutional infirmity only if it takes place under procedural safeguards designed

to obviate the dangers of a censorship system.' "

The failure of Section (g) to comport with these basic principles renders it incompatible with the First Amendment. Indeed, the Supreme Court of Pennsylvania, in Commonwealth v. Guild Theatre, Inc., 432 Pa. 378, 248 A.2d 45 (1968), decided one week prior to the Carroll case, anticipated the action of the United States Supreme Court in Carroll, when it invalidated an ex parte injunction obtained by the District Attorney of Allegheny County against an allegedly obscene movie in spite of the fact that a hearing on the final injunction was to be held four days later.[3] Mr. Justice O'Brien, speaking for the majority, pointed out that freedom of speech is constitutionally protected until it is judicially adjudged to be obscene. The Court held that the granting of an injunction after an ex parte hearing and with no record made of the proceedings (which is similar to what occurred in the case before us), was reminiscent of Star Chamber proceedings of yore and was "shockingly defective." The Court went on to say:

"The fact that appellants may have been offered a full dress *hearing* within four days of the original restraint does not suffice. Quite clearly, there is no provision for a prompt *decision*."[4]

With regard to a procedural requirement for a prompt decision after an adversary proceeding, the Court suggested, as a model, the New York statute which pro-

---

3. In the Guild case, the District Attorney proceeded in equity on the common-law theory of public nuisance against the exhibitors of an allegedly obscene motion picture. Approximately twelve days after the institution of the equity proceedings, the Pennsylvania Obscenity Act currently before the Court became effective. Thus far, there appears to be no attempt other than in the current proceeding to invoke the provisions of this Act.

4. Similarly, the Supreme Court reasoned in Carroll as follows:

"The issuance of an injunction which aborts a scheduled rally or public meeting, even if the restraint is of short duration, is a matter of importance and consequence in view of the First Amendment's imperative. The denial of a basic procedural right in these circumstances is not excused by the availability of post-issuance procedure which could not possibly serve to rescue the August 7 meeting, but at best, could have shortened the period in which petitioners were prevented from holding a rally." Carroll v. President and Commissioners of Princess Anne, supra, 393 U.S. at 184, 89 S.Ct. at 353.

vides for a trial within one day after joinder of issue and a decision within two days of the conclusion of the trial.

Applying the authorities hereinabove referred to, it is clear that Section (g) of the Act of June 24, 1939, P.L. 872, § 524, as amended, 18 P.S. § 4524(g), as presently written is constitutionally defective and cannot stand. Accordingly, Judgment will be entered declaring Section (g) of the aforesaid Statute violative of the First Amendment of the United States Constitution and permanently enjoining the District Attorney of York County from further proceeding against plaintiff under this Section of the Statute.