Apple Storage Co., Inc. *v.* Consumers Education and Protective Association et al., Appellants.

Argued October 5, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Harold I. Goodman,* with him *Joel G. Weisberg, David A. Scholl, Peter W. Brown* and *Harvey N. Schmidt,* for appellants.

No oral argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 7, 1971:

We are here presented with a disregard of our previous decisions concerning the issuance of ex parte injunctions in situations where First Amendment rights are involved.

Appellants are an unincorporated Pennsylvania association known as the Consumers Education and Protective Association (CEPA), and some of the present and former members of that association. CEPA has a predominantly low-income membership dedicated to the education and peaceful protection of the consumers in the greater Philadelphia area.

This action arose when a Mrs. Theresa Gilliam came to CEPA with a consumer grievance. Mrs. Gilliam al-

legedly[1] had placed a number of household goods and family heirlooms in storage with appellee in 1966 at a cost to her of over $800. When she requested delivery of these goods in January, 1970, she was informed that some of them were missing. Appellee, admitting its liability, offered to pay $35 for the loss, while Mrs. Gilliam claimed they were worth $875. CEPA failed in its efforts to negotiate a settlement with the storage company. As a last resort, CEPA began to picket appellee's business premises in a peaceful manner. No disruption or disturbance occurred, and appellants left all entrances and exits unimpeded. Some members of the Philadelphia police force were present at CEPA's request.

Appellee filed a complaint in equity on June 5, 1970, seeking to restrain the picketing, without informing appellants or appellants' counsel. Three days elapsed between the filing of the complaint and the hearing on the requested relief, and still no notification was given to appellants, although several of CEPA's members were right outside the storage company's premises.

On June 8, 1970, a judge of the Court of Common Pleas issued an ex parte injunction, also without any attempt to advise appellants of that hearing, and setting June 12, 1970 as the date for a hearing on the preliminary injunction. No transcript exists of any testimony, nor is there an opinion by the chancellor explaining the basis for his decree.[2]

---

[1] The ensuing recitation of "facts" is based solely on appellants' allegations in its brief, rather than any findings by the chancellor. However, the accuracy of appellants' factual assertions is immaterial to our decision, for the mere issuance of the ex parte injunction, without notice, is invalid. See discussion infra, pp. 314-315.

[2] The fragmentary record before us demonstrates that notice of the taking of the appeal was given to the chancellor in accordance with our Rule 63. However, he has not furnished us with the statement or opinion required by that Rule.

Appellants did not receive notice of the chancellor's June 8 action until June 10. The following day they petitioned this Court for a special order of supersedeas to stay the effect of the injunction. We granted the petition on June 12, 1970. Appellee chose not to file a brief or appear for oral argument before this Court.[3]

We agree with appellants that the case is not moot. The underlying dispute between the storage company and CEPA remains unresolved, which presents " '. . . not merely the speculative possibility of invocation of the [injunction] in some future [consumer] dispute, but the presence of an existing unresolved dispute which continues . . .'." *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 178, 89 S. Ct. 347, 350 (1968) (holding appeal from 10 day ex parte injunction not moot). Half a century ago, the United States Supreme Court said that "[t]he questions involved in the orders of the Interstate Commerce Commission are usually continuing . . . and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review . . ." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S. Ct. 279 (1911). This principle was specifically applied to ex parte preliminary injunctions in *Carroll*, supra, at 178-79, 89 S. Ct. at 350.

The United States Supreme Court supported its conclusion as to the mootness issue in *Carroll* by noting that in *Walker v. City of Birmingham*, 388 U.S. 307, 87 S. Ct. 1824 (1967), they had held that the proper procedure in challenging an injunction was not to disobey it but rather to seek judicial review. Thus, "[p]etitioners have here pursued the course indicated by Walker; and in view of the continuing vitality of petitioners' grievance, we cannot say that their case is

---

[3] The fragmentary record also indicates that notice of the taking of the appeal was given to counsel for appellee.

moot." *Carroll v. President and Commissioners of Princess Anne,* supra, at 179, 89 S. Ct. at 350. The same reasoning is equally applicable to the case now before us.

We now turn to the validity of the five day order. Decisions of both the United States Supreme Court and this Court have made it *clear beyond question* that an ex parte injunction without notice to those enjoined and without any effort to invite or permit their participation in the proceedings is invalid. As the United States Supreme Court said in *Carroll*: "There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate." Id. at 180, 89 S. Ct. at 351.

Likewise, in *Commonwealth v. Guild Theatre, Inc.,* 432 Pa. 378, 248 A. 2d 45 (1968), this Court was confronted with precisely the same issue presented now by the chancellor's action. We condemned identical ex parte injunction procedure as being "shockingly defective," and "reminiscent of the Star Chamber proceedings of yore." We continued: "Without desiring to impugn the motives of any who participated in these proceedings, it must be apparent that such practices *must not be allowed to continue.* [emphasis added] Rule 1531(a) of the Pennsylvania Rules of Civil Procedure provides: 'A court shall issue a preliminary injunction *only after written notice and hearing* unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held . . .' . . . Here no attempt to give notice was made. In the several hours

that elapsed between the filing of the complaint and the hearing, it may well have been possible to give notice." Id. at 381, 248 A. 2d at 47.

In *Guild Theatre* we were dealing with a situation where only several hours elapsed between the filing of the complaint and the hearing. Here, the hearing was held *three days* after the complaint was filed, and still appellants had not been notified. There was absolutely no indication of any immediate and irreparable injury ". . . as to justify the abandonment of the precious safeguard of an adversary hearing. . . ." Id. at 381, 248 A. 2d at 47.

Even if the hearing had been held with notice, the chancellor's decree would still be vacated because it is invalid on its face.[4] The decree makes no reference to what specific activities of appellants are to be enjoined; it only states that "a preliminary injunction issue." Long ago we indicated that: "The entry of an injunction is, in some respects, analogous to the publication of a penal statute; it is a notice that certain things must be done or not done, under a penalty to be fixed by the court. . . . Such a decree should be as definite, clear and precise in its terms as possible, so that there may be no reason or excuse for misunderstanding or disobeying it; and when practicable it should plainly indicate to the defendant all of the acts which he is restrained from doing, without calling upon him for inferences or conclusions about which persons may well differ." *Collins v. Wayne Iron Works,* 227 Pa. 326, 330, 76 Atl. 24, 25 (1910).

---

[4] The decree read as follows: "And Now, this 8th day of June, 1970, upon consideration of the within Complaint and Affidavit, it is Ordered and Decreed: that a preliminary injunction issue upon security being entered by the plaintiff in the sum of one thousand ($1,000.00) Dollars and the 12th day of June, 1970, in Room 378 at 2:30 P.M. is designated as the time and place of hearing to continue the injunction."

The required specificity is all the more appropriate when the decree in question is a preliminary injunction, let alone an ex parte preliminary injunction.

The decree granting the ex parte preliminary injunction is vacated and the case remanded for proceedings consistent with this opinion. Appellee to pay costs.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I do not join in the opinion of the Court principally because I see no reason to accept as a basis or even as background for decision "facts" which appear only in a party's brief. I deem this especially unwise where, as here, the factual allegations of the other party (as revealed in this case by inspection of the original complaint) present a different picture.[1] I do, however, concur in the decision for the reasons (1) that the preliminary injunction was obtained in violation of the Pennsylvania Rules of Civil Procedure and (2) that the decree granting the injunction was void for vagueness.

The complaint and the injunction affidavits asserted irreparable injury to plaintiff caused by appellants' activities; they did not, however, state that the injury would be sustained before notice could be given or a hearing held, and there is nothing of record to show that plaintiff tried to give notice to appellants or that the giving of such notice was a practical impossibility. Under Pa. R. C. P. 1531(a), a preliminary injunction granted *ex parte* is invalid "unless it appears to the

---

[1] The record in the lower court is limited, the appeal having been taken soon after the action was commenced. It consists of docket entries, the complaint, two injunction affidavits, the decree of the lower court (a copy of which is attached to appellants' brief) and the notices relative to appeal. Appellant did not print the record, having been granted permission to proceed *in forma pauperis* under our Rule 68.

satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held." As stated by a leading commentator, "the normal rule is never to grant a preliminary injunction except after notice to the defendant and a hearing before the court." 2 Goodrich-Amram, §1531 (a)-5. *See, also,* 10 Anderson Pennsylvania Civil Practice, p. 382, 1970 Supp. p. 166; 8 Standard Pennsylvania Practice, Ch. 36, §6, p. 390. The Rule is but declaratory of what has long been our case law. Thus, in *Kittanning Brewing Co. v. American Natural Gas Co.,* 224 Pa. 129, 73 Atl. 174 (1909), the Court stated: "The awarding of a preliminary injunction without notice is somewhat like judgment and execution before trial, for temporarily the defendant is *damnatus inauditus.* It is to be resorted to only from a pressing necessity to avoid injurious consequences that cannot be repaired under any standard of compensation. It ought never to be granted except in a clear case of an invaded right, to prevent irreparable mischief; and when the proof as to the right is so equally balanced as to leave it in doubt, the writ should be refused until the rights of the parties are ascertained and settled: The Mammoth Vein Consolidated Coal Company's Appeal, 54 Pa. 183; Brown's Appeal, 62 Pa. 17; Minnig's Appeal, 82 Pa. 373."[2]

Moreover, as the opinion of the Court correctly holds, the decree granting the preliminary injunction is clearly lacking in the requisite precision. An in-

---

[2] The Court in the *Kittanning Brewing Co.* case further stated that when a preliminary injunction is awarded without notice, "it is the right of the enjoined to move at once for its dissolution, instead of being compelled to wait for the complainant's motion to continue at the expiration of five days." Although this would normally be a desirable procedure since it might obviate the necessity of appeal, it is not a prerequisite for an appeal, in view of the provisions of the Act of February 14, 1866, P. L. 28, §1, 12 P.S. §1101.

junction should stand on its own feet and be complete within itself. Without a reading of the prayers of the complaint, the instant decree is meaningless.

Mr. Justice JONES joins in this concurring opinion.