## Todd et al. v. Sablosky et al.

*William S. Fenerty*, for plaintiffs.

*Samuel D. Goodis, I. Jerome Stern*, of *Sundheim, Folz & Sundheim*, and *A. Balfour Brehman*, of *Gilfillan, Gilpin & Brehman*, for defendants.

HEILIGMAN, J., July 12, 1939.—The purpose of this proceeding is to secure a preliminary injunction against the alleged violation by defendants of certain building

restrictions which are upon some unimproved ground at Vernon Road and Sprague Street in this city. Plaintiffs are the owners of a dwelling at 6740 Sprague Street, directly across the street from the ground in question. Plaintiffs aver that defendants intend to violate the restrictions by erecting on the ground a motion picture theatre, five stores, and a parking lot.

The restrictions in question, which are conceded to be against defendants' land and to inure to the benefit of plaintiffs, forbid the use of the property for a tavern, barroom, saloon, undertaker's establishment, stock yard, planing mill, carpenter shop, blacksmith shop, stone cutting yard, public or private hospital or sanitarium, manufacturing or other business causing offensive smells or injuriously affecting the health or comfort of the neighborhood, or for any purpose which for any reason would in law be a nuisance if established in a closely-settled suburban locality. A public garage is prohibited, but one which is accessory to an apartment building is specifically permitted.

The tract in question is the same tract which was considered by the court in passing upon plaintiffs' appeal from the action of the Zoning Board of Adjustment in granting defendants a permit to build the theatre and stores (C. P. No. 4, March term, 1939, no. 1715). We there held that, due to invasion of commercial activity into the neighborhood, the zoning of the tract as commercial was proper and reasonable.

A preliminary hearing was held on June 20, 1939, at which plaintiffs introduced testimony to the effect that defendants were planning to build a motion picture theatre seating 1,000 people, five stores, and a parking lot for 600 automobiles; that the theatre would have a large illuminated sign and marquee at the corner of Vernon Road and Sprague Street, but the side illumination, being behind glass brick, would not reach much beyond the sidewalk; that plaintiffs objected to the proposed development of the lot because "it will bring large gatherings of

people, bring many automobiles which will be parked all over the area," causing a loss of peace, quiet and comfort, and if the cars are not parked on the streets they will be concentrated in the parking lot, creating a lot of carbon monoxide gas, thereby endangering lives. Plaintiffs also called a real estate broker who gave it as his opinion that the presence of the theatre and stores would depress the value of plaintiffs' property unless it increased the value. The operator of the proposed theatre testified that he intended to operate the theatre in the manner best calculated to secure the goodwill of the neighborhood.

The question before the court is whether or not the use of the tract for a theatre and stores and a parking lot is per se a violation of the restrictions.

The restrictions do not specifically prohibit the proposed uses to which the tract is to be put. Certain uses are mentioned in the restriction, and that is followed by a general prohibition against manufacturing or other uses which cause offensive smells or injuriously affect the health and comfort of the neighborhood. This is the part which bears on the present controversy. The prohibition which follows against any use which would be a nuisance in a thickly-settled suburban community is helpful to the extent that it raises the inference that motion picture theatres and stores were not intended to be banned, for it would be difficult to find a thickly-settled suburban community which does not have its local motion picture theatre, stores and parking lots; in fact in the more densely populated suburban centers there are many stores and more than one theatre.

The first question, therefore, is whether motion picture theatres and stores are uses that injuriously affect the health and comfort of the neighborhood. There is, of course, no inherent harm to health and comfort in a motion picture theatre. This court has held in Boger v. Kahn et al., 23 Dist. R. 816, and in the zoning case that a motion picture theatre is not per se a nuisance or an offensive use, and thus does not of itself disturb the neigh-

borhood. The method of operation of theatres, and the uses to which the stores may be put, such as the supermarket that is talked of, may constitute a nuisance, but on this point we make no ruling, as there is no way of determining now the facts required to decide that question. It should be noted that the owner of the theatre has promised to provide parking space for 600 cars, to take the parked automobiles of patrons off the street, and the court will see that the promise is carried out.

Plaintiffs point to cases in which the assembly of great crowds for profit constitute a nuisance in a residential neighborhood. The crowds here are not an established fact but are anticipated as a future fact. Plaintiffs lose sight of the fact that the proposed theatre is an ordinary neighborhood movie house, of which there must be several hundred in Philadelphia and in the suburbs. Plaintiffs seem to regard the drawing power of this theatre as a composite of a world's championship baseball game, football game, and prize fight. The picture which plaintiffs paint in their brief about operation of the theatre and stores must be very pleasing to the promoters of the enterprise. The streets will be teeming with people night and day, seven days a week, brought from near and far in countless automobiles. If this is the case, the chances are that the value of plaintiffs' property will be increased rather than decreased. While we do not feel obliged to pass upon the merits of plaintiffs' contention as to the operation of the theatre, it seems apparent that plaintiffs' apprehension is greatly exaggerated. Until it can be actually demonstrated that the theatre and stores do attract a crowd of such proportions that the health and comfort of the neighborhood are imperiled, we cannot pass on this question.

There appears to us to be a marked distinction between plaintiffs' cases on crowds and the facts in the case at bar. In Walker v. Brewster, 5 L. R. Eq. Cases 25, 31, the street was choked with people so that persons could not reach their homes without forcing their way through the

crowd, which was composed of idle and dissolute persons, attracted by an 18-piece band, heard for two and a half miles, and sky rockets. In Rex v. Moore, 3 B. & Ad. 184, 110 Eng. Repr. 68, the crowd trampled the grass and broke down fences. In both of these cases the crowd was an established fact. In Edmunds et al. v. Duff et al., 280 Pa. 355, the court cited the first case as standing for the proposition that *any noise*, which tends to collect large crowds of *noisy and disorderly people* in the vicinity of a person's residence or place of business *may be* a nuisance. Those elements are not present or even alleged to be present in the case at bar. There, too, the contemplated use was an amusement park, which the court found would include music pavilions, merry-go-rounds, scenic railways, swings, shooting galleries, dance halls, restaurants, lunch counters, soft drink stands, motion pictures, theatres, electric fountains, and electric lights. The amusement park is a far cry from the theatre and five stores which defendants here propose to build, and in absence of facts showing there would be a constant disturbance of the neighborhood, we do not believe plaintiffs are entitled to the relief granted in Edmunds et al. v. Duff et al., supra.

The remaining question is whether the open-air parking lot comes under the ban of the restriction against public garages. The restrictions themselves as well as the law (Ladner et al. v. Siegel et al., 293 Pa. 306), recognize the fact that a garage that is not open to the public but is for the convenience of patrons of a proper use is not a nuisance even in a residential neighborhood. It is possible that there might be erected upon this tract an apartment building housing a thousand persons, and to build a garage having a capacity of 600 cars to accommodate the persons living in the apartment house. This would be strictly in accordance with the restrictions, and if the entrance were opposite plaintiffs' dwelling, plaintiffs would not have any ground for complaint under the restrictions. On this theory, the parking lot, if consid-

ered a garage, is not banned by the restrictions, provided it is used exclusively for the convenience of the patrons of the stores and the theatre and not used by the public generally. The parking lot is necessary to take the automobiles of patrons off the street, and, if limited to that purpose, we hold that it is not prohibited by the restrictions.

For the foregoing reasons, the motion for a preliminary injunction is dismissed, without prejudice to plaintiffs' right to apply to this court at any time for relief against objectionable operation of the theatre and the parking lot, or against any objectionable use to which the stores may be put.