## Cambria Coal Company v. Commonwealth of Pennsylvania

*Leo M. Stepanian,* for applicant.
*Donald A. Brown,* for the Commonwealth.

HARNISH, *Chairman,* February 16, 1983—This is an appeal by Cambria Coal Company from DER's failure to issue mine drainage permit 11810109 to appellant for a proposed mining site in Reade Township, Cambria County.

## FINDINGS OF FACT

1. Cambria Coal Company (Cambria) is a Pennsylvania corporation with an address of P.O. Box 69, Clarion, Pa. 16214.

2. The Commonwealth of Pennsylvania, Department of Environmental Resources (DER) is the Commonwealth agency authorized to issue mining permits required by the Pennsylvania Clean Stream Law, Act of June 26, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq., and the Pennsylvania Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, as amended, 52 P.S. §1396.1 et seq. (Surface Mining Act).

3. Sometime before April 15, 1982, Cambria applied to DER to operate a surface coal mine on the property of Eugene and Helen Rudzinski, in Reade Township, Cambria County by submitting mine drainage permit application no. 11810109.

4. Both the Anthony Matthews' home and the Terry Matthews' home use a water supply that draws water from an underground spring that surfaces on the property of Eugene and Helen Rudzinski and then flows by pipes to the homes of Terry and Anthony Matthews.

5. Anthony and Terry Matthews (Matthews) are tenants at will of the Rudzinskis.

6. Since the mining plan shows that Cambria proposes to mine directly through the spring located on the Rudzinski property, Cambria does not dispute the DER conclusion that the spring serving as the basis for the Matthews' water supply will be diminished.

7. Cambria and Rudzinskis have executed an agreement under which the Rudzinskis authorized Cambria to mine through the said spring provided that Cambria would furnish a replacement water

supply of a specified quality after mining was concluded. The said agreement also provided that it would not be necessary for Cambria to provide a temporary replacement water supply during mining.

8. The Matthews have been directed by the Rudzinskis to cease using the said spring.

9. On April 15, 1982, Mr. P. J. Shah, Chief of the Permit Review Section of DER's Ebensburg Office notified Cambria by letter that the said agreement between the Rudzinskis and Cambria, wherein Cambria agreed to replace the Rudzinski water supply only at the conclusion of mining, did not satisfy Cambria permitting obligations because: (1) the agreement did not include agreements from either Terry or Anthony Matthews; and (2) the agreement did not provide for replacing the affected water supply during mining.

10. The April 15, 1982 letter then said:

"Submit an acceptable agreement signed by the water users indicating their acceptance of the proposed water supply which does not have quantity and/or quality equal or better than the original spring, or *document the availability of a replacement supply of equal or better quantity and quality.*" (Emphasis added.) (See DER letter of April 15, 1982.)

11. The DER letter of April 15, 1982 did not require Cambria to obtain written agreement from all users prior to mining as the only means of satisfying its obligations because said letter indicated that either documentation *or* an agreement would be acceptable by DER.

12. Cambria appealed from the DER letter of April 15, 1982.

13. Cambria has in and by its answer to DER's

interrogatory 12 supplied the information requested by DER.

## DISCUSSION

The issue joined in the instant appeal concerns DER's legal authority to require an applicant for a mine drainage permit to either obtain written agreements from all users of a spring which will be affected by mining or, in the alternative, to document replacement water supplies prior to issuance of said permit.

There is little or no dispute between the parties that appellant's proposed mining, pursuant to mine drainage permit 11810109, will affect a spring located on property owned by Eugene and Helen Rudzinski in Reade Township, Cambria County. Indeed, it appears that according to Cambria's proposed mining plan, the spring will be mined out. It is also not in dispute that Cambria has entered an agreement with the Rudzinskis whereby Cambria will provide a permanent replacement supply after mining but is not required to provide a temporary water supply during mining.

The Cambria-Rudzinski agreement apparently did not satisfy DER because it did not bind either Terry or Anthony Matthews who have used the spring as a water supply and because Cambria had not documented where it would obtain a post-mining water supply to satisfy the said agreement. Thus, on April 15, 1982, DER, through P. J. Shah, issued the presently appealed letter wherein DER stated that the requested mine drainage permit cannot be issued until Cambria submitted

". . . an acceptable agreement signed by the water users indicating their acceptance of the proposed water supply which does not have quantity

and/or quality equal or better than the original spring, or *document the availability of a replacement supply of equal or better quantity and quality.*" (Emphasis added.) (See DER letter of April 15, 1982.)

DER has chosen not to press its authority to require agreements from the Matthews. Rather, DER points out that its April 15 letter sets forth alternate means to comply, the latter being by Cambria documenting the availability of a replacement water supply and DER maintains that as long as it has the authority to require such documentation its authority to require the agreement is irrelevant.

Cambria suggests that DER has overstepped its authority by requiring documentation of a replacement water supply *prior* to mining. Cambria admits that the Surface Mining Conservation and Reclamation Act requires that

"Any surface mining operator who affects a public or private water supply by contamination or diminution shall restore or replace the affected supply with an alternate source of water adequate in quantity and quality for the purposes served by the supply. If any operator shall fail to comply with this provision, the secretary may issue such orders to the operator as are necessary to assure compliance." (52 P.S. §1396.4b(f))

However, Cambria points out that this provision, on its face, only applies after a surface mining operator has affected a water supply, i.e., this section does not require the operator to demonstrate anything during the application phase. This argument is much too sweeping. We do not believe that the General Assembly intended that in cases like the instant one where it could be predicted with certainty by review of an applicant's mining plan that

a water supply would be affected that the Commonwealth had to wait until this event happened. Commonwealth Court has held that the Commonwealth doesn't have to wait until mining produces the acid mine drainage (AMD) which is forbidden by statute and regulation, but rather, may deny a mine drainage application which fails to demonstrate that mining can be accomplished without the production of AMD: Harman Coal Company v. DER, 34 Pa. Commw. 610, 384 A. 2d 289 (1978). Likewise, Commonwealth Court also held that even in the absence of specific statutory authority, DER can legally refuse to issue a mining permit when it determines that an aspect of the operation of that surface mine (blasting) would create a public nuisance, i.e., that DER need not issue the permit and then move to abate the nuisance by order after it has occurred: Glascow Quarry, Inc. v. DER, 23 Pa. Commw. 270, 351 A. 2d 689 (1976). These holdings of Commonwealth Court, we believe, are in line with the general legal principle that a court of equity may enjoin a nuisance before it occurs so long as the nuisance is demonstrated to be likely to occur: Edwards v. Duff, 280 Pa. 355, 124 A. 489 (1924).

We are also persuaded that the above-cited section of SMCRA is not the only applicable law. We agree with DER that the information requested in the appealed letter of April 15, 1982 is expressly required by the surface mining regulations administered by DER, especially by 25 Pa. Code § §87.41, 87.47 and 87.119 and thus must be submitted even if we were to accept Cambria's narrow construction of Section 4.2(f) of SMCRA, 52 P.S. §1396.46(f).

Since we have held that the information requested by DER is required to demonstrate compliance with statutes and regulations relevant to the pro-

tection of the Commonwealth's public natural resources, it follows that DER also has a constitutional duty to seek this information under Article 1, Section 27 of the Pennsylvania Constitution: Payne v. Kassab, 11 Pa. Commw. 14, 312 A. 2d 86 (1973) aff'd 468 Pa. 226, 361 A. 2d 263 (1976).

In sum, we hold that DER has demonstrated abundant legal authority, streaming from various sources, to support its request for information on alternate water supplies contained in the April 15, 1982 letter. Cambria has submitted the information to DER in the form of an answer to DER's interrogatory 12, and DER, in paragraph 9 of its motion to dismiss, has acknowledged that the answer submitted by Cambria substantially provides the information sought by DER in its April 15, 1982 letter.*

While Cambria has not, officially, amended its application to include its answer to interrogatory 12 the board shall do so on its own motion in the remand order set forth below in order to expedite DER's issuance of the said permit.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the subject matter and parties.

2. DER has legal authority to require an applicant for a mine drainage permit, whose mining plan shows that it will affect a public or private water supply, to submit documentation of alternate water supplies.

---

*Since we have upheld DER's authority to require documentation of a replacement water supply we need not and do not reach DER's authority to require agreements from the Matthews.

## ORDER

And now, February 16, 1983, Cambria's appeal is dismissed and Cambria's application is remanded to DER to be treated as including the information contained in Cambria's answer to DER's interrogatory 12.